The final case of the morning is Mendez and Covarrubias v. Bondi, well it's consolidated Mr. Hayes. Good morning may I please the court Benjamin Hayes for the appellants I've reserved four minutes for rebuttal. This case involves a straightforward question of statutory interpretation. 8 U.S.C. section 1225 a deems all aliens who are present in the United States or without being admitted or who are arriving in the United States to be applicants for admission and then section 1225 b2a requires the detention of such applicants for admission if they cannot show they are clearly and beyond a doubt entitled to be admitted. The statute is clear and this court should enforce it as written. The petitioner's argument their contrary reading is not only at war with the statute's text but it would reimpose the exact same perverse regime that existed before in which aliens who were present in the United States contrary to the greater protections including bond hearings as compared to those who presented at a port of entry in compliance with law those individuals are subject to mandatory detention. That is what Congress was trying to eliminate this court should not adopt that backwards result and should reverse. So I'll start with the text of section 1225 at which are you aware of I mean I'm aware that there's a number of habeas petitions pending in this circuit and in other circuits do you have a rough sense of how many there are? There were likely hundreds if not thousands. Well your brief said a thousand and that was filed two weeks ago. Yes that is hundreds and hundreds of them pending. Yes there's a significant number of them to be sure and at this point in January that number has increased substantially since some of the filings we submitted with other numbers as well. Okay. So I'll just start with the tech start with the text of 1225 which I've mentioned deems aliens who are present in the United States without being admitted to be applicants for admission. It deems that it doesn't matter what they're doing that is the category applied to them and b2a says they must be detained if they cannot show their clearly and beyond a doubt entitled to be admitted. The petitioners here do not dispute that they are applicants for admission within the meaning of a1. They also do not dispute they could not show that they're clearly and beyond a doubt entitled to be admitted. Their entire theory for why they are not subject to mandatory detention under b2a is the words the phrase seeking admission in in section b2a and their theory is that that phrase limits the scope of limits the applicants of admission who are covered to those who are in their words. You do acknowledge that that's how it's been read historically? That's how it's been used historically? I don't know that so in terms of the interpretation I actually don't know that anyone's put any interpretation on language but if your point is the statute has not been imposed historically to mandate detention of the full scope that it is now that's certainly true. What do you do with the language in Jennings versus Rodriguez where I believe it was Alito said that section 1225 applies to aliens seeking admission into the country and section 1226 applies to detention of aliens already in the country. What do we do with that language? Well I think so I think it's important to understand what Jennings was doing. Jennings was not addressing the scope of these provisions at all. Jennings was addressing a very specific question which was whether these it was reviewing a 9th Circuit decision which applied the constitutional avoidance which had read into these statutes 1225 and 1226 to allow for bond hearings after six months they were trying to avoid a due process conclusion and all Jennings did was say 1225 and 1226 cannot be read fairly read to allow for bond hearings and that is all Jennings decided. But you do acknowledge that that language is in the opinion? The language is in the opinion in the sense that the court laid out a general background of a statute that it was addressing. So is your argument that the language is dicta? Absolutely dicta. Aren't we bound by dicta from the United States Supreme Court? I don't think you are bound by dicta by the Supreme Court. I don't even think I think courts of appeals pay attention to persuasive dicta. I don't think this is even that. All that language appears just in the background. The court is saying here's the statutory framework that we're addressing and so it lays out generally speaking what the statute does and then it answers the questions actually presented which has nothing whatsoever. Isn't there another Supreme Court case where they start off with a 1225A1 and then go to 12B2A and say detention is mandatory? I thought that was in Thurgisigian maybe? That could be in Thurgisigian. It might be it might be there but I do think like as with Jennings I am not aware of a Supreme Court case that has addressed this issue right the question of like no one disputes that section 1222B2A mandates detention. That's not that's not what is issue. The question is how many? Who? The scope of that detention authority and there's been no Supreme Court decision that addresses that issue which is one reason why their reliance on Nielsen's versus Priap I think should go nowhere because that decision like Jennings did not say one that decision did not purport to address 1225 at all much less its interaction with 1226. So I'll turn to why their argument the definition of seeking admission that they advocate simply cannot be right and I think the key to why it can't be is 1225A3 and that provision says all aliens including alien crewmen who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by an immigration officer and as we cited multiple cases in our brief I think one from the Supreme Court other courts of appeals the or otherwise language operates to create a catch-all relationship between what comes before is subsumed within the broader category that comes after and this is this is how we would understand spoken English the point the example we gave in our brief if your doctor tells you to bike jog or otherwise exercise exercise is obviously understood as the catch-all bike and jogging are sub parts of that and applied to this statute here A3 the outcome is clear. How do we square that with 8 USC 1101 813 a which defines admission as lawful entry after inspection and authorization? I'm not that sure that changes I'm not sure that's in conflict though maybe I don't understand the point of conflict you want to identify. I guess my question is if 1225 on your reading of seeking an admission it doesn't seem to square with the statute that defines it specifically as lawful entry into the United States. After inspection and and authorization by an immigration officer right so I think I think if you are if you are present in the United States without admission you are deemed to be an applicant for admission you are necessarily by operation of law seeking admission admission itself then as defined in that provision drawn or noted means lawful entry after having been inspected and received authorization to be in the country by an immigration officer. So I don't see any conflict between the definition and the provision. You cannot exclude these petitioners from 1225 a right? No. They're clearly within 1225 a so it must mean something as to them. Right I think that's right but I think applicants for admission by being deemed that. That's right and and I think the important point. Which means that whenever they encounter someone related to immigration the immigration person has a duty to inspect them. That's correct that's right and I think in fact if if the if seeking admission which is in both a three but why it's relevant it's also in b2a it has to mean the same thing in both provisions. The reason why it can't mean what they say is for one reason it makes a complete mess out of a three because if seeking admission means that it applies only to aliens who are going in search of trying to acquire lawful admission to the United States that's their definition of what it means then that reduces the inspection requirement to those who wish to be inspected shall be inspected. But why doesn't your reading make a complete mess out of 1226 c1? What would be the purpose of having 1226 c1 on your reading of the of 1225? That required that provision requires detention for inadmissible aliens who who have committed or been charged with certain criminal acts. Sorry I was looking at a separate subject 1226 c1 so why have that? Well I think a couple things about c1 I think first of all I think it is clear that c1 does a lot of work beyond on even under our interpretation of 1225 b2a right there are grounds of deportability that are listed in c1 which would not be do not overlap at all with 1225 b2a because those individuals who are subject to deportability grounds have been admitted to the United States. So 1225 applicant for admission that's totally separate issue. I do think an additional reason why 1226 c1 does more work in other words even as applied to the grounds for inadmissibility which are listed in there under subparagraphs a and d is because the restriction on release limits that the executive executives parole authority that would otherwise exist. So I think there are a couple what there's there's no doubt that there's a lot of work for c1 to do even under our interpretation of 1225 b2a and I think a really important point here is even if some portions of c1 overlap and would be redundant on our interpretation of 1225 the Supreme Court has been crystal clear very clear Barton versus the Barton decision the Romini decision that number one surplusage is common in legislative drafting. Courts obviously would prefer not to you know in reading statute it's a it's a plus factor if you can read it to not have surplusage but it's absolutely not as Romini said a silver bullet and one thing Barton was very clear about that you do not rewrite otherwise clear text to avoid redundancy in another statute. They said that in one of the immigration cases recently didn't they? Barton itself was an immigration case they might have said it again but I think that just drives the point home and that's especially true frankly with respect to the INA. This court in the Marquis case I can't remember the year and other courts have as well noted the INA is not exactly the model of clarity and it has been has been enacted amended over time so it is not that surprising that you're going to have redundancies that arise over time. Isn't didn't the Supreme Court also describe I know they cited a case perhaps and I get the names of the petitioners confused cite a case that explained this background purpose of IRIRA to combine exclusion and deportation proceedings and you know eliminate the difference in treatment for those who came in at the border and those who already didn't the Supreme Court describe that or cite one of the cases that did? It may have I don't remember what case it did but I don't think there's any controversy at all that that's exactly what IRIRA was trying to do prior to IRIRA as you say there were exclusion proceedings which applied to those at the border presenting their port of entry and those individuals were subject to mandatory. And there were a lot of differences between those and the dis I'm so sorry disadvantaged entrance at the border from those already it wasn't just bond it was other things as well. There were other things as well and that's certainly true I think burden of proof was was one of them but I do think that you know the now it's legislative history but it's same legislative history the committee report that they rely on which states that Congress's objective in enacting 1225 and was to eliminate that sort of disparate favorable treatment that existed for those who have been in the country unlawfully they got additional favorable treatment as your honor mentioned but access to bond was one of them and I don't think it's well the fact of the matter was that IRIRA on its face did that it made that sort of inequitable it didn't distinguish those arriving at the port of entry and those who circumvented the port of entry isn't that right that that's right IRIRA did that and so that I mean everybody admits that right that IRIRA eliminated that disparate treatment yes that it eliminated that disparate treatment so that's not legislative history I mean statutory history right that's right all I was always indicating was that there's legislative history where Congress itself is saying that's we want to do sure yes sure IRIRA did it because the definition of applicant for admission is incompatible with that something like that existing because it treats everyone who is arriving or present pre-admission to put them on the same footing so how does a meaningful review of detention works on your reading of statutes or is there no review of detention at all under 1225? Review of detention? How there are in 1226 they make they do a review to determine whether or not somebody has a flight risk or whether or not they are a dangerous are danger and dangerousness analysis excuse me how does anything does this mean that you're reading me that there is no meaningful review of detention so those decisions about flight risk and danger to the community not to be considered at all they are not considered under 1225 B2 that's correct because as Jenny said it doesn't allow for bond hearings and by the way that is also potentially true of 1226 because the bond hearings that are available under 12 someone who is a matter of regulation Jennings says one of the things Jennings says is to 1226 is that it can't be read to require the executive to produce bond hearings so if they exist as a matter of regulation but both statutes neither statute requires the provision of bond as far as I'm aware see I have 56 seconds I'm not sure if there are additional questions but yeah what what looking at the Federal Register from 1997 the both parties rely on parts of that but at 12 3 3 2 3 23 I think it says I Ryra extended the mandatory detention provisions to additional classes of inadmissible and deportable aliens but providing an exception for certain witnesses been down a pair within the same paragraph despite being applicants for admission aliens who are present without having been admitted or paroled will be eligible for bond but it but the the petitioners use that eligible for bond but it says despite being applicants for admission I think it's recognizing the tension between what they are doing I think that's that's fair but is true too that in the same regulation that's I think has been existent since the same time period around Rira this is 8 CFR 235.3 that's the one we cite in our brief that that seems to very clearly track exactly our understanding of statute so at worst so that regulation was in effect since 1997 I pull I pulled it up but of course it was the most current version so you're saying that regulation was became in effect in 97 and it provided for I believe that's correct attention that is my understanding it's a while since I it's been a few well it's in your brief so right right right I hope it's accurate as do I so yes that's my okay you have time for a bottle thank you all right mr. tan may it please the poor court good honor your good morning your honors Michael tan on behalf of petitioner at the leaves this case is about whether Congress in 1996 said that non-citizens who enter without inspection have to be detained and we know that Congress created in 1996 a limited detention mandate at 8 USC 1226 C for aliens with crimes as Judge Douglas referred to and that that Congress was so concerned about that rules impact that it delayed its for two years but on the government's view the same Congress also created a detention mandate that's larger by several orders of magnitude that covers millions of people and that somehow escaped everyone's notice for the past 30 years that's not what Congress did in 1996 or any time since instead for the past three decades everyone has understood 1226 to maintain the executives discretion over whether to detain people present in the country without admission and that follows from the text and structure of 1226 as well as the agency's contemporaneous regulations and three decades of consistent problems why don't we start with 1225 yes tell me are your your clients fall within the ambit of 1225 do they not so they are deemed applicants for admission under 1225 right they're clearly not seeking admission because they've been present in the country for years and so the question before the court is that when Congress deemed our clients applicants for admission as a kind of legal fiction it meant them to be treated as if they were still at the border for purposes of the detention statute in our position is that it didn't require that instead it detained him under 1226 which is the statute that applies to people apprehended inside the country and we know that from 1226 C and the Lake and Riley Act as judge judge Douglas pointed out there's simply no way to make sense of those statutes unless you understand 1226 to apply to our clients in the first place in 1996 in Congress enacted the detention the mandatory detention rule at sea and applied it to inadmissible aliens like our clients and then even more clearly just last year Congress passed the Lake and Riley Act precisely to target non-citizens who have entered the country without inspection let me ask you a question 1225 says an alien present in the u.s. who has not been admitted or who arrives in the u.s. shall be deemed an applicant for admission that's right doesn't your interpretation of your clients right remove the first half of that sentence the first half being alien president in the United States because then you go further to say your clients aren't even seeking admission which means they didn't even have to be in interrogated so with respect your honor we disagree so we agree that Congress deemed them applicants for admission but that that was serving other purposes sure so as as your honors were discussing with my colleague during his argument by deeming our clients applicants for admission Congress changed how they'd be treated in their removal cases it made them inadmissible it put the burden of proof on them and this was a sea change in IRA IRA and it also denied the bond so we disagree because 1225 b2 in our view is limited to people who are seeking admission not just applicants for admission and in fact what is what is seeking admission mean in terms of 1225 a right so so seeking admission appears in b2 as you know your honor and we agree with Judge Douglas that it should be given its plain meaning seeking a lawful entry into the country and our view is people who are already present here in that case let me go back in that case all 1225 a should have said was an alien who arrives in the United States shall be deemed an applicant for admission well again we disagree your honor because we the deeming of our clients is present without admission still does work insofar as changing their status in their removal proceedings and we would but you're saying they're excluded from 1225 because of the language specifying that you need to be seeking admission and we think as a matter of plain reading people who are already in the country in our clients cases for many years simply aren't seeking admission this is also consistent what are they seeking they're seeking cancellation of remove right and and that's I'm sorry your honor if I may thank you so so they're seeking relief and that's another reason why the government's reading is quite strained here and this is clear by the Supreme Court's recent decision in Sanchez against Mayorkas which makes clear that people like our clients when they seek relief they're seeking a lawful status here through cancellation in that case temporary protective status asylum but that doesn't constitute an admission it doesn't go backwards in time and cure the fact of them having made an unlawful entry it just protects them from removal and gives them a lawful status in the country so in our view our clients are seeking relief seeking lawful status but they aren't seeking admission and that's what the Supreme Court said in Sanchez that's precisely why the clients there couldn't apply for green cards because they were still unlawful they were still unlawful and I think you're about to answer a question that I have and that was about the Lake and Riley yeah so if everyone is supposed to be detained after 1225 then what what is the argument as to what the need for both 1220 61 and the Lake and Riley are yes so we agree your honor that if the government were right and that our clients people like our clients were under 1225 be that would effectively gut the Lake and Riley Act because the Lake and Riley Act is aimed at people who entered without inspection and committed certain crimes now the government says no Lake and Riley is still serving to eliminate their release on parole but that's a misreading of how the statute is structured and is inconsistent with justice Alito's opinion in Nelson against pre-op where the court explained that the only people subject to mandatory detention under 1226 C which is what the Lake and Riley Act amended are the people who are arrested under 1226 a in the first place the Ninth Circuit had helped otherwise they treated 1226 C as providing its own arrest authority and then read that statute to only apply to people who the government picked up right away when they were released from criminal custody the Supreme Court justice Alito rejected the entire premise of that interpretation and said no A and C work together you're only subject to 1226 C if you are arrested under 1226 a in the first place that is right in the middle that is that is clear from the text of pre-op and so if the government is right that 1225 is the applicable statute C 1226 C and I know there's a lot of statutory provisions here but that statute never comes into the picture and those clients become eligible for parole. They're redundant. They're redundant. Why are they not just redundant? Well they are not superfluity arguments they're redundancy arguments. Right so you're asking do the statutes overlap? They in our view they don't. Well we've taken they may they may overlap I mean obviously you're saying your clients overlap because you're saying your clients are aliens present in the United States under 1225 a but they're also eligible to bond under 1226 so there is potential for overlap. So yes we agree that both 1225 and 1226 address their circumstances but we don't think there's an overlap between the detention statutes again because we think 1225 b2 only applies to those who are seeking admission and the 1226 is the applicable statute for people arrested in the interior and that's consistent with pre-op. I think the other reason why it's very difficult to read the statutes to overlap Judge Jones is that 1225 b2 is a detention statute. It requires the government to take people into custody. 1226 a is discretionary and so it wouldn't make sense to have the two work together because that would affect. 1226 also applies to a vast number of aliens who are who were admitted legally. Yes. But then overstayed their visas. That's right. And it also applies to a vast number who were you know admitted erroneously. Absolutely your honor. That means it's much broader than 1226 b because Judge Jones just asked you if the c1 and 1226 applies both to aliens who were inadmissible but were it but and also were admitted and then committed crimes and became deportable. That is a if we have a Venn diagram that is a larger circle than the 1226 b seeking admission applicants for admission isn't it? So so they may overlap but but but only in part. I mean so so just if I may pause for a second so I think the government is arguing that 1225 is the applicable statute for everyone who's inadmissible and that 1226 applies to people who have been admitted here and are subject to deportability. And our position is that that does not make sense. Oh I'm sorry. It says both. The government says both. There's c1a and d says is inadmissible but c1b, c, e say well b and c say is deportable is deportable. Isn't that addressing a different kind of person? Someone who's admitted commits crime and is thereby deportable because they committed a crime. So we agree that 1226 c applies to both inadmissible and deportable aliens and we think that favors our position because c is written as an exception to 1226 a that's in the plain language of the statute and so the only way to read c is to understand that 1226 a applies to inadmissible aliens in the first place. I guess can you explain to me just as a general matter of common sense someone who's you say seeking admission means they've presented themselves to a port of entry so they're seeking admission and 1226 b says well if you're doing that you're not you can't get a bond hearing right can't get a bond hearing. This other group of people who have not presented themselves at a port of entry but who are you know picked up and they're they're they're they're being deported they're being removed they do have the ability to get a bond hearing. Why make that distinction? Sure so if I may reframe and answer the question your honor so it's it's not simply about whether you get a bond hearing but whether the agency has to detain you or whether it has discretion over the decision to detain. Okay put it that way then why would you have to detain that first group of people right and so not the other second. You know the legislative history is largely silent on this issue our best understanding of why Congress wanted to avoid creating the detention mandate that the government is advancing here is that it would have overwhelmed the system there were literally two million people who would have been subject to this detention rule had it actually gone into effect in 1996 and we know from the way Congress behaved when it enacted 1226 C the detention mandate it actually enacted it took pains to defer implementation of that much smaller detention mandate. Because they were concerned about the number of people who might fall under that. Exactly that that is that is our that is our understanding of the legislative record your honor. What do you say about this CFR 8 235.2 B I think it is so it which provides for detention under 1225 B it's very express has that been in effect since 1997. That's right your honor it has been in effect in 1997 I believe you're referring referring to the regulation yes where an alien is considered for expedited removal or fast-track deportation process they're found to not be eligible and then the reg says they'll be detained under B2 I have two responses to that your honor at the same time the agency enacted a series of other regulations which are cited in our brief affording discretionary release on bond to non-citizens who are arrested in the interior and consistent practice over 30 years has been to follow those regulations so so we think that is much more probative of how the statute should be interpreted under Loper Bright those two facts contemporaneous regulations and consistent practice are given great weight or traditionally have been given great well I mean the Supreme Court didn't think very much of that argument in the Pereira case as to the notices to appeal which had been erroneously incomplete for at least 10 years and the court said they they don't thought they don't follow the law that's that's true your honor I think here the consistent practice is still worthy of significant consideration on pardon me yeah I just it seems to me equally plausible interpretation of the regulatory landscape that yes Congress was ambivalent about actually requiring everybody to be detained but at the same time it realized what the law said which is the preface to that view of the Federal Register combined with the fact that the Federal Register said well you know a lot of people realize that when we did that when we've allowed people to go free pending removal proceedings that they abscond and they never show up so there's been a tension on both sides of that for the entirety since I driver was passed well hasn't there so we agree that regulation is included in the 1997 rule along with the regulations affording release on bond and then those were put into practice so we agree that there we think that first regulation if the law said what the law says and if it's interpreted to require in inspection statements consistent with inspection of all aliens present in the u.s. who are deemed applicants for admission then that just is part of the underlying law that a president can exercise discretion and enforce right so our bottom line position on that regulation your honor is that it's just contrary to the statute and again I would I would go back to the Lake and Riley Act in particular and like I will admit there's something a little surreal about having worked on these cases because just last year we know Congress passed the most significant immigration legislation that we've seen in decades precisely to I'm sorry precisely to take aim at non-citizens who are present without admission and have certain crimes and so effectively the government has to be arguing that Congress just doesn't understand its own statute but contrary because when Lake and Riley was passed the former the 30-year procedure of allowing bond to criminal aliens was still in existence right right Riley was done to reinforce the the unavailability of bond well at a time when the statutory before the administration had read the law differently so with respect your honor if Congress thought the agency had got it all wrong for 30 years they could have corrected that problem but also I think that the 30-year backdrop supports our position in so far as Congress legislated with that backdrop in mind and so under cases like Brown and Williams and tobacco company you can understand Lake and Riley if you want to take that approach as ratifying the long-standing agency practice at the time which is that certain people were bond eligible and that's why Congress had to deal with that problem I don't think you need to go there I think been in place for 30 years that certain people are eligible for bond we're not happy with that anymore particularly those were unhappy about the folks with certain criminal records so we're gonna have to take steps to eliminate the option of release it'd be very strange for Congress who have done that if all along people were detained under 1225 subject to that mandatory detention rule subject to possible release on parole which of course Lake and Riley doesn't even address in its own terms what do you know about the Lemus decision that was issued around 2012 so yes that's right your honor so lemus involves certain grounds of inadmissibility that apply to people who have been unlawfully present here it doesn't of course it doesn't address the detention statutes that issue here I think to the extent the board assumed that deeming someone an applicant for admission means they're seeking admission for every purpose we disagree with the board and in fact if you look at the underlying statute again we think if anything it supports our position that's 1182 a 9 where Congress reflected a recognition differentiated between people who seek admission and people who enter unlawfully so it applied a 10-year bar to people who seek admission but a lifetime bar a permanent bar on people who enter the country unlawfully after being a present here for I believe more than a year. Well I didn't mean the substance of Lemus but I believe it refer it either refers to the extraordinarily broad interpretation or definition in 1225 a1 I still don't understand what the what is the point of the definition in 1225 a1 which talks about aliens who have not been admitted or who arrived all being subject to inspection right so you don't deny that your your clients are subject to inspection we absolutely honor and I think again we see the purpose of the deeming provision is completely changing how removal cases work well then what do you do I'm sorry I'm sorry then what do you do with 1225 a5 which says an applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States so we would also argue that provision applies to people who are actually seeking to enter the United States to make a lawful entry so basically you have a definition in 1225 a1 and nothing in the rest of the provisions pertains to those people well there's also the inspection provision that the government relies on at a3 and I say 10 seconds so I'd like to finish my answer here with the permission of the court thank you so the government argues that applicants for admission are a subset of people seeking admission and that's made clear by the inspection provision at a3 the point I want to make is that it's actually the opposite and that the statute actually favors our position applicants for admission is a larger set of aliens than those seeking admission because it includes people who are both seeking admission and those who aren't people who are present here without admission and in fact if the government were right it would render the statute surplus age because if if it's true that applicants for admission are a subset of seeking admission there's no need for Congress to a specified applicants for admission in that statute there have to be some applicants for admission who aren't seeking admission in order to avoid the surplus age problem but there's that is an instance in which deeming does the of subjecting our clients to inspection insofar as they are applicants for admission the statute requires the inspection of all applicants for admission seeking admission or not as well as any other alien who's seeking admission readmission or transit through the United States well I mean the sentence statement says can be testify under oath regarding the purposes and intentions of the applicant and seeking admissions in other words it it pretty much uses applicant as one identical to one seeking admission in a5 as far as I think well we disagree we think the statute is contemplating people an applicant who's actually seeking admission and again someone who's apprehended in interior seeking relief in a removal proceeding they are not seeking admission they wouldn't be subject to that particular provision so with that we would urge the court to affirm the decisions below thank you much your honor okay thank you mr. Hayes just a few points in the bottle your honor so I want to say briefly something about the lake and Riley act because that got some attention I think judge Jones I believe you are exactly right and understanding the point that the long practice which my friends rely on so much in terms of what the executive was doing is actually really helpful purposes of understanding why the lake and Riley act why Congress did what it did yes Congress is well well aware that the executive was not enforcing the law and I think there's no way to understand the lake and Riley act of all things as being an endorsement or codification of Congress's action if that was a very firm statement by Congress they were very upset at the manner in which the cut at which the executive was carrying out the tension authority and they were they were meaning to strictly confine it so I don't think that can possibly be understand as a ratification of prior practice and it was focused on a particular issue so obviously they could have overhauled the immigration system again but they're trying to address something specific on to another point I have yet to hear from my friend on the other side how his definition of seeking admission could possibly work within the context of this statute again their definition is that the alien has to be voluntarily seeking some affirmative act seeking out trying to acquire the thing so imagine how would one know if an alien is is moving between ports of entry how on earth is one to know whether they are seeking admission or not I have no idea do you just take their word for it maybe they don't confront an immigration officer at all and at that point is the question how long they've been in the United States or how far they've gotten to the United States they make a big deal of the fact that they've been here a while but the key point is the statute doesn't say anything about those issues and the reason it doesn't say anything about those issues is because that is not the statute was intended to address and Congress knows how to write in temporal or geographic limitations in statutes when it wants to it did that in the expedited removal provision in 1225 b1 you talked earlier about all of the habeas cases that have come to pass since in the last couple of months and your friend on the other side talked about the two-year delay that was given with the changes that were made there was no such there was no such delay given here on this new reading of 1225 is is that correct or am I I mean back in 19 you are correct in that arera did not include a transition period why do you think that is I'm not sure the answer it could well have been number one that the language of 1226 is crystal clear right that that they must take in to custody aliens who are the criminal aliens and so because that language is so unbelievably clear Congress could have thought that the executive would take that more seriously I'm not sure it also could be that the detention facilities needed to house criminal aliens are different than might otherwise be with respect to aliens who haven't committed you know a felony or a crime in the United States I don't think I don't know that the legislative history says anything about that but I think that's a very not a sound ground on which to over otherwise overrule clear statutory text on this issue in just the remaining seconds I have I just want to thank the court for having been willing to expedite the case but in brief in an oral argument the one thing I'll say beyond that is I've alluded to earlier about the significant uptick in these habeas cases that has been a large burden for a while but just in the month of January it has I've been told by the US Attorney's Office exponentially larger so is this issue pending in front of any other circuits it is pending in front of almost all other circuits the six have they had any oral arguments in any of those cases there is an oral argument than seventh today and there are other scheduled in March to scheduled in March and I may be forgetting what you would you the panel in Seventh Circuit is not constrained by the temporary injunction case that they had something with a C right I mean that is the Kessin on Neva yes question young yeah the 1225 issue is a portion of that and the motions panel reached it so I mean I can't speak for what the Seventh Circuit will do but it is a live issue in that case well in our court we would not be bound by a motions panel that's all I'm saying oh no I agree with that I agree with that so it is it is for the merits panel to decide but I'll just finish up by saying given that I know what it's not the courts practice certainly or preference to resolve a case in this way but if if the court will be willing I think this would be the circumstance where it would be appropriate to resolve the case by order with disposition noted and opinion to follow we filed a motion to this effect it's pending with the court but I just wanted to make sure that was for your consideration I think the first time well let me just pursue one other thing about that the petitioners responded to and said that that would really make things more difficult for everybody concerned what is what about that I'm not sure how it would we have one issue before the court now the statutory question and if the disposition was as we hope it would be reversal then that I don't know how that could be misconstrued as anything other than reversal on the statutory question there's not in other words a due process claim here or otherwise so I don't know that that I don't know how that would make things more difficult for anybody and of course you know once the decision issues then the reasoning of the court we affirm would that make it more difficult I don't think it would you'd be just endorsing the statutory interpretation all right thank you